Cakuthees, J.,
delivered the opinion of the court. ,
This is an action of ejectment for six hundred and forty acres of land in Dyer county. The plaintiff below read and relied upon a grant by the State of Tennessee, dated 2d July, 1824, to the trustees of Cumberland College, assignees of the University of North Carolina, and proved the defendants in possession.
The defendant relied upon the deeds of the sheriff of Dyer county, on tax sales, and more than seven years possession under them by himself or tenants. The court *602 .charged that the deeds were void, and that the statute of limitation did not run against the plaintiffs below.
The only question it is necessary for us to decide, arises upon the construction of the act of limitations of 1819. If that applies, it would not be material whether the tax sales and deeds were void or not; because, if the deeds “purported to convey an estate in fee simple,” seven years’ possession under them would cure them of all unsoundness, and make them perfect and paramount to all other titles, not within some of the savings of the statute.
■ But it is insisted here, that Cumberland College is saved from the operation of the statute. The words at the close of the third section Car. & Nich., 444, which are-relied upon, are these: “ And provided also, that this act shall have no bearing on the lands reserved for the use of schools.”
Now, if by any fair construction, this saving can be extended to all lands held by universities, colleges, academies and common schools, we think public policy would require it to be done. As the promotion of learning in our country is of the highest importance to its prosperity and happiness, the protection of lands and other means set apart for that purpose, might, perhaps, very properly, deserve more consideration than the policy upon which statutes of limitation are founded. By these laws the better title is made to yield to the inferior; because, as a general question of interest to the whole, it is thought best to offer up, as a sacrifice to the general good, to the peace and quiet of society, the individual rights of the citizen, or at least to withhold from him the aid of the courts, in asserting his rights after a fixed period. This, then, being a mere question of public policy, and *603 against private right, it might seem that the higher policy of sustaining schools ought to prevail. This, however, is not for us, but the legislature to determine.
But the question before us is one of construction of legislative intention. Was it the intention of the legislature of 1819, to exempt from the general operation of the act, cases of this description; or can their language, by any fair construction, be extended so far? If so, we would certainly be inclined to adopt it.
It is, however, well settled by a long series of decisions in this State, that the savings of the statute cannot be increased or enlarged by the courts. New exceptions must be made by the legislature, as that body may deem it wise and proper.
The titles of corporations, whether they are created for schools or other purposes, are certainly subject to the general bar of the statute. There is no saving for them. The saving is only in the case of lands “ reserved for the use of schools.” Can it be supposed that it was in the mind of the legislature, in 1819, to embrace in that saving, lands that might be after that time sold, or donated by individuals or other corporations, to institutions of learning? The word reserved, must have some meaning. The legislative history of the country, up to that time, clearly fixes the signification of the phrase.
By the Cession Act of congress of 1806, 2 Hay. & Cobb, 14, as a condition of the cession, to the State of Tennessee, of all the vacant land north and east of a line therein designated, afterwards called the “congressional reservation line,” required the State to appropriate one hundred thousand acres in one tract to colleges, the same quantity for the use of academies, one in each county, and moreover six hundred and forty *604 acres in every sis miles square, where existing claims will allow it, “which shall be appropriated for the use of schools for the instruction of children forever.” Tire college and academy lands, the legislature was empowered to sell for not less than two dollars per acre, and vest the proceeds, for the purposes intended. No such power was expressly given over the “school lands.” Now, these lands in the various counties where they were located, were always known by the name of school lands, or lands reserved for the use of schools. They were much neglected by the public authorities and subject to be wasted and occupied by intruders. There was then a definite idea in the phrase “reserved for the use of schools.” But to give it the largest signification of which it is capable, it could only be extended to the college and academy, as well as school lands, reserved in this act of cession, or set apart and “reserved” from sale or appropriation for other purposes, by the legislature acting under, and in pursuance of the act of congress.
The warrant upon which the grant in this case is based, was transferred, with many others, to the trustees of Cumberland College, by the University of North Carolina, in 1822. To extend the saving in the statute to these lands, would leave no land belonging to a literary institution, whether obtained by will, deed or otherwise, subject to the bar. This construction would not only give the word “schools” a much larger signification than that which it has in common parlance, or most probably had in the minds of the members of the legislature of 1819, but would strike out the word “reserved,” or entirely change its meaning.
*605 We feel constrained, tben, in giving a fair construction to the language of the act, and sustaining the policy on which it is founded, to decide that the plaintiff below is not embraced in the saving of the statute, and is therefore subject to the bar of seven years.
His honor, the circuit judge, having charged the law differently, the judgment must be reversed, and a new trial awarded.
TotteN, J., dissented.